UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Shenee Clarke, | . |
| | . |
| Plaintiff, | . |
| | . |
| vs. | . |
| | . |
| Piscataway Twp. Bd. of Educ., | . |
| | . |
| Defendant. | . |

Civil Action

Case No.:
Honorable:

**COMPLAINT**

COMES NOW the Plaintiff, by and through undersigned counsel and for causes of action against the Defendant, would respectfully state as follows:

## I.  JURY TRIAL DEMAND

1.    Plaintiff demands a trial by jury on each and every one of her claims for which a jury trial is legally available.

## II.  JURISDICTION AND VENUE

2.    Plaintiff's causes of action arise under (1) Title IX of the Education Amendment Act of 1972; (2) Section 1983 of the Civil Rights Act of 1964; 42 U.S.C. Section 1985 of the Civil Rights Act of 1871; 42 U.S.C. Section 1988 of the Civil Rights Act of 1964; and Wrongful Termination.

3.    This Court has personal jurisdiction over Defendant because Defendant Piscataway Township Board of Education ("Board") is a public agency of the State of New Jersey with its administrative offices and activities located in Middlesex County, New Jersey.

4.    This Court has jurisdiction over this present matter pursuant to 28 U.S.C. §1331 and 20 U.S.C. §1415(i).

5.    Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b), and in its Newark Vicinage, because the events giving rise to the allegations and claims herein have been committed in the Piscataway Township Board of Education, and the policies and practices, Athletic Coaching Extra Duty Contracts, collective negotiations agreement, building administrators and personnel, are maintained and administered and assigned at and to the offices and school buildings of the Piscataway Township Board of Education; and Plaintiff was employed at the Piscataway Township Board of Education, Middlesex County, New Jersey.

6.    Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201; Rule 57 of the Federal Rules of Civil Procedure; and the Court's inherent equitable authority.

### III. **PARTIES**

7.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

8.  Shenee Clarke is a citizen of the United States and of the State of New Jersey.  She is a resident of Teaneck, New Jersey, Bergen County.

9.  Shenee Clarke is referred herein as "Plaintiff" or "Girls' Basketball Head Coach."

10. Plaintiff entered into an Athletic Coaching Extra Duty Contract as High School Girls' Basketball Head Coach for the 2024-2025 school year.

11. She is an ambitious and dedicated professional with sixteen (16) years' expertise in girls' and women basketball coaching at the high school, AAU, and collegiate levels.

12. She is highly capable of employing interpersonal and influential skills, on and off the court, to encourage athletic and academic excellence.

13. She is a coach, classroom teacher, and educator who holds a valid New Jersey Standard Teacher Certificate.

14. As a collegiate basketball player Plaintiff was a 2015 Hall of Fame Inductee at Caldwell College, and as a high school player, a 2009 Hall of Fame Inductee at Ridgefield Park High School.

15. She has held numerous basketball coaching clinics involving Motivational Skills, Sportsmanship, Building a Team, Basketball Philosophy, Good Character, Health & Fitness, Academic Achievement, Offensive/Defensive Drills, Individual Skill Development, One-on-one Defense, Shooting Drills, Team Toughness Drills, Rebounding Drills, Post/Guard Drills

16. Plaintiff is well-versed in building winning teams with strong character, developing systems to accommodate players according to their skill level, and creating successful game plans during tournament, regular, and post-seasons.

17. She has afforded players opportunities to compete in front of D1, D2, and D3 collegiate coaches nationwide, resulting in scholarships at each level.

18. Plaintiff Shenee Clarke exemplifies exceptional leadership and sportsmanship abilities within both public and private institutions and is recognized for stellar coaching within high school and college basketball programs.

19. Defendant Piscataway Township Board of Education ("Board," "School District," or "District") is a comprehensive community public school

district governed by a nine-person (9) board of education, organized and existing pursuant to New Jersey law. Defendant Board at all relevant times acted under color of law.

20. Defendant Board operates eleven (11) schools: one (1) pre-kindergarten; four (4) elementary schools; two (2) intermediate schools; three (3) middle schools; and one (1) high school.

21. Defendant Board is a public agency of the State of New Jersey, located in Middlesex County, with registered offices at 1515 Stelton Road, Piscataway, New Jersey 08854.

22. The School District is serving approximately 7, 360 students during the current 2024-2025 school year.

23. The School District receives federal funds each year to support the operation of the Title I program in schools. Title I is a K-12 program that provides additional academic support and learning opportunities for students at schools with high percentages of socioeconomically disadvantaged children. The program is intended to help ensure that all students meet state academic standards.

24. The School District has six (6) schools designated as Title I schools and receives approximately five percent (5%) of its annual revenue through federal funds.

25. Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§1681 – 1688 (2018) ("Title IX"), prohibits discrimination based on sex in any education program or activity that receives federal funding. This includes public K-12 schools.

26. Title IX applies to a wide range of educational aspects, including admissions, recruitment, financial aid, academic programs, athletics, housing, and employment. *It covers both students and employees, as well as, school athletics, requiring schools to provide equal opportunities for both male and female athletes. This includes equitable funding, facilities, coaching, and scholarships.*

27. *It is noteworthy that public high schools that fail to comply with Title IX risk losing federal funding. The U.S. Department of Education's Office for Civil Rights (OCR) is responsible for enforcing Title IX compliance and can investigate complaints and conduct compliance reviews.*

## **FACTUAL ALLEGATIONS**

28. The School District's High School Principal Christopher Baldassano has the authority to direct and control the work duties, responsibilities and performance of the employees assigned to his school building. He also has authority to establish practices, to decide who may benefit

from establish practices, and to take corrective action against any employee who questions the application of established practices.

29. Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek act of behalf, and with the consent of, High School Principal Christopher Baldassano.

30. With the consent of High School Principal Christopher Baldassano, Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek also act on behalf of Athletic Director Robert Harmer.

31. Collectively, High School Principal Christopher Baldassano, Athletic Director Robert Harmer, Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek conspired to act in a manner contrary to the best interests of the School District and the Girls Basketball program for the 2024-2025 school year.

32. Ultimately their retaliatory actions caused the Board to "rescind," or wrongfully terminate, the Athletic Coaching Extra Duty Contracts of a highly successful and respected veteran Girls' Basketball Head Coach, and her assistants, that could bring that sports program back to GMC and state-wide prominence.

33. Plaintiff, former Girls' Basketball Head Coach Shenee Clarke, is an African American woman.

34. At the instruction of High School Principal Christopher Baldassano and Athletic Director Robert Harmer, and contrary to established past practice, Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek repeatedly refused to assist Plaintiff's assistant coach candidates in obtaining substitute teaching credentials.

35. Girls' Basketball Assistant Coach candidates, Amanda Gordon and Zana Godoy, are also African American women.

36. With each refusal Plaintiff warned Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek that she would report to the Middlesex County Superintendent of Schools and the Board's Superintendent of Schools their abrupt policy of withholding assistance from qualified coaching candidates in securing Instructional Substitute Credentials, a requirement for employment under both Board Policy and the New Jersey State Interscholastic Athletic Association ("NJSIAA").

37. The NJSIAA requires volunteer, assistant, and head coaches to hold New Jersey Teaching Certifications or New Jersey Instructional Substitute Credentials (60 college credits).

38. Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek's repeated refusal to assist

Plaintiff's assistant coaches in obtaining substitute teaching credentials caused the Board to rescind their Athletic Coaching Extra Duty Contracts ("ACEDC") before the start of competition.

39. For reasons yet to be discovered, and despite being qualified and eligible to hold the position of Girl's Basketball Head Coach for the 2024-2025 school year, the Board wrongfully terminated Plaintiff's ACEDC.

**A.** **Retaliation for Vocalizing Interest in Union Membership**

40. Plaintiff is a certificated instructional teacher at the Paterson Charter School for Science and Technology and is a member in good standing of the Paterson Charter Education Association.

41. Plaintiff is also a former collective negotiations member of the Teaneck Township Education Association.

42. Upon entering an ACEDC with the Board, Plaintiff asked Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek several questions about the Agreement between the Board and Association, about obtaining a copy of that Agreement, and about joining the Association.

43. As a member of the Paterson Charter Education Association, and newly appointed Girls' Basketball Head Coach, Plaintiff was seeking to exercise her right to unit membership and the protections under the Agreement.

44. Article IV, Association Rights and Privileges, Section 8, provides in pertinent part that:

"Pursuant to NJSA 34:13A – 1 et seq. the Board hereby agrees that every employee of the Board shall have the right freely to organize, join and support the Association and its affiliates for purpose of collective negotiations and other concerted activities for mutual aid and protection. As a duly selected body exercising governmental power under the laws of the State of New Jersey, the Board undertakes and agrees that it shall not directly discourage or deprive or coerce any employee in the enjoyment of any rights conferred by NJSA 34:13A – 1 et seq. or other laws of the State of New Jersey and the United States, that it shall not discriminate against any employee with respect to hours, wages, or any terms or conditions of employment by reason of membership in the Association and its affiliates, collective negotiations with the Board, or the institutions of any grievance, complaint or proceeding under this Agreement or otherwise with respect to any terms or conditions of employment."

45. Article IX, Miscellaneous Provisions, Section D, Individual Contract, provides in full that:

"Any individual contract between the Board and an individual employee, heretofore or hereafter executed, shall be subject to and consistent with the terms and conditions of this Agreement. If any individual contract contains any language inconsistent with this Agreement, this Agreement during its duration shall be controlling."

46. Notwithstanding Plaintiff's repeated inquiries, and the known protections that she was entitled to, the Board's Human Resources personnel neither provided Plaintiff with answers to her union membership questions nor with a copy of that requested Agreement.

47. Given Plaintiff Shenee Clarke's facial and bodily reactions and expressions, Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek were aware that their nonresponsive answers did not sit well with Plaintiff.

48. Ultimately, Plaintiff believed that she did not have the freedom to ask Human Resources Director Colleen Pongratz, High School Principal Christopher Baldassano, and Athletic Director Robert Harmer questions about union membership without being subjected to retaliation.

## B. Violations of Plaintiff's Rights Under the Collective Negotiations Agreement Between the Board and Association

49. Article I, Recognition, Section A, Unit, of the Agreement provides that:

"The Piscataway Township Board of Education hereby recognizes the Piscataway Township Education Association as the exclusive representative for collective negotiations concerning grievances and terms and conditions of employment for all nonsupervisory personnel whether under contract, on leave, presently employed, or hereafter employed by the Board in the classifications described below: Classroom Teacher (i.e., holder of an Instructional Certificate and/or Substitute Teacher Credential) . . . "

Section B, Definition, subsections (1) and (2) provides that:

"Unless otherwise indicated, the term employee shall refer to all persons in the job categories represented by the Association in the negotiations unit as described above. The term "teacher" shall refer to persons in the positions of classroom teacher (i.e., holder of an Instructional Certificate and/or Substitute Teacher Credential) . . . "

50. Every Board appointed High School Girls' Basketball Head Coach holding a valid Instructional Certificate and duly executed ACEDC Contract is entitled to recognition as a Piscataway Township Education Association ("Association") unit member entitled to the protections of its collective negotiations Agreement.

51.     The Board violated Plaintiff's right to the protections of the Agreement between the Board and the Association by unilaterally rescinding her ACEDC, effectively terminating her employment without due process under Article III, Grievance Procedure and Article XVI, Teachers/Certificate Personnel, Section K, Fair Dismissal Procedure, of the Agreement; in addition to District Policy 3124, Employment Contract, District Policy 3143, Dismissal and District Policy 4140, Termination.

1.     **Plaintiff's ACEDC Does Not Set a Deadline for her Assistant Coaches to Obtain Substitute Credentials, Giving Cause for Termination and Posting of a Vacancy**

52.     Article XVI, Teachers/Certificated Personnel, Section G, Teacher Assignment, Subsection 2(a), Notice of Vacancies, of the current collective negotiations Agreement between the Board and the Association provides that:

"Each school year, known vacancies for the following school year shall be posted on the district's website under the heading of "Anticipated Vacancies."

53.     The vacancies for the Piscataway High School's Girls' and Boys' Basketball Head Coaching appointments were posted pursuant to Article XVI of the Agreement during or around the month of May 2024, through Piscataway Township School District's Frontline Education (applitrack.com) and NJ School Jobs (njschools.com).

54.     Article XVI, Section U, Extra Duty Compensation, provides that:

(1)     Whenever vacancies occur in new, or existing "Extra Duty" positions these procedures shall be followed by the Administration.

(a)     Not later than May 1, staff members shall be notified of all extra duty vacancies for the coming school year. (b) A review shall be made of all applications and all qualified candidates from within the system shall be interviewed. (c) All candidates shall be notified within a reasonable period of time of the decision reached with reference to filling the position. d. Staff members may place their name on file for consideration of an extra duty position at any time. The administration shall keep a file in the event that a vacancy occurs during the school year. e. Preferential consideration shall be given to all candidates from within the district. f. After the general posting, extra-curricular vacancies shall be posted individually during the academic year. The Association shall be notified of said vacancies during the summer recess. g. Extra-duty contracts shall be issued no later than thirty (30) days after teachers have been appointed to such positions by the Board;

(2)   The method of payment for extra-curricular compensation shall be as follows:

(a)   Full year activities shall be compensated at the teacher's option as follows: (1) One installment at the last pay date of the academic year. (2) Two installments at January 30 and the last pay date of the academic year. (b) Single session activities shall be compensated with one (1) payment at the next succeeding payroll after the Director of Human Resources is notified of assignment completion; and,

(3)   Extra Duty Salary Guides are attached hereto in Section W.

55.   Some candidates for Piscataway High School's Girls' and Boys' Basketball Head Coaching appointments were directly notified by email or personally through School District personnel.

56.   Potential candidates from within and outside the School District submitted written applications and credentials for consideration.

57.   The School District reviewed all applications and interviewed the qualified candidates.

58.   Among other candidates, the Board extended interviews to Plaintiff and High School Social Studies Teacher Brian Tuskan.

59.   During Plaintiff's two (2) interviews for the Girls' Basketball Head Coach appointment, the first with Athletic Director Robert Harmer, High School Principal Christopher Baldassano, Assistant Athletic Director Julia Myatt, and Girl's Cross Country Coach Ashwin Anantharaman, and the second with Superintendent of Schools Dr. Frank Ranelli and Piscataway High School Principal Christopher Baldassano, the interviewers focused primarily on Plaintiff's prior coaching appointments and experiences, philosophies, assistant coaches, successes and failures, and future goals and objectives for the 2024-2025 season.

60.   The Board exercised due diligence in investigating Plaintiff's coaching background, employment history, and contacting the references provided.

61.   The Board informed Plaintiff and High School Social Studies Teacher Brian Tuskan in a timely manner of its decision to fill the Girls' Basketball Head Coach vacancy.

62.   The Board chose Plaintiff Shenee Clarke as Girls' Basketball Head Coach because of her extensive and special expertise, and history of success in coaching girl's high school and women's collegiate basketball, as well as her goals and objectives for the High School team's 2024-2025 season and Program going forward.

63.   Considering (1) that High School Social Studies Teacher Brian Tuskan served as Girls' Volleyball Head Coach for the previous five (5) consecutive seasons, 2020-2021 through 2024-2025; (2) that the Board

never previously appointed him Head Coach of any girl's athletic sports team, let alone basketball; and (3) that during the previous ten (10) school years at Piscataway High School, Brian Tuskan coached various boys athletic sports teams as an assistant and/or at the junior varsity level, including volleyball, soccer, swimming, and baseball, it is curious how Brian Tuskan was even considered for the Girls' Basketball Head Coach appointment.

64.  During the April 25, 2024, Regular Public Meeting, the Board approved the appointment of Plaintiff as Girls' Basketball Head Coach.

65.  The Athletic Coaching Extra Duty Contract between the Board and Plaintiff was executed by Board President Shantell M. Cherry effective September 23, 2024.

66.  The Contract in relevant part provides that:

"'The Piscataway Township Board of Education agrees to employ Shenee Clarke as Girls' Basketball Head Coach for the 2024-2025 school year, at a stipend of G-1, $8,511.00 payable after work is completed.

It is expressly understood that the assignment is in addition to the regularly assigned duties of said _teacher_ and it is further agreed that this is a temporary one-year assignment only, and in no way comes under _tenure_ provisions . . . All coaches agree to abide by the Code of Ethics for Coaches . . .

THE COACH:

Must engage in conduct both on and off the court with the best interest of the community, school, and team in mind; Develop a complete understanding of the rules and regulations of the game and coach within that framework; Displays a respect toward the officials and their duties; Demonstrates good sportsmanship in winning as well as in losing; Refrains from the use of profanity and obscene gestures; Understands and respects the individuality of each member of a team; Develops a set of training and team rules that are fair to all members of the team.'"

67.  The stipend of G-1, $8,511.00 was negotiated by the Association and is exacted from Article XVI, Teachers/Certified Personnel, of the Agreement and Section W, Extra Duty Salary Guides.

68.  _Plaintiff's November 15, 2024, termination letter is bare of any comments or statements that even remotely suggest that Plaintiff violated the Code of Ethics for Coaches._

69.  _In addition to regularly assigned duties, Plaintiff held Summer and Pre-Season workouts and participated in Hunterdon Horizon Girls Fall Basketball League approved by Athletic Director Robert Harmer._

70.  _The terms and conditions of the ACEDC between the Board and Plaintiff do not set a deadline in which Girls' Basketball Assistant Coaches must_

*have a Substitute Teaching Credential.  The deadline is logically any time prior to the start of competition.  That was officially as of December 9, 2024.*

71.  *The NJSIAA Rules and Regulations do not set a deadline in which Girls' Basketball Assistant Coaches must have a Substitute Teaching Credential. The deadline is logically any time prior to the start of competition. That was officially as of December 9, 2024.*

72.  Defendant Board had no cause to replace Plaintiff as Girls' Basketball Head Coach, particularly with an unqualified Caucasian male who was then serving as Girls' Volleyball Head Coach for the 2024-2025 school year. Additionally, the Board failed to provide notice to the Plaintiff and did not post the "vacancy" in accordance with Article XVI of the Agreement.

**C.**  **Bad Faith in the Appointment of Basketball Coaches for the 2024-2025 School Year**

73.  It was not until the School District's May 9, 2024, Regular Public Meeting, did the Board finally announce the appointment of a woman as Girls' Basketball Head Coach.

74.  The Minutes from that Meeting read in relevant part:

"New Basketball Coaches Put on the Black and Gold

Welcome to Piscataway! Two veteran coaches will be taking the helm of our Piscataway High School basketball programs next season, with Shenee Clarke taking over the girls' team and Bob Turco stepping in with the boys."

75.  The Board updated its website at piscatawayschools.org to list "Girls Basketball Head Coach: Shenee Clarke (sheneeclarke24@gmail.com)" for contact purposes.

77.  During the April 25, 2024, Regular Public Meeting, the Board also approved the appointment of Robert Turco as Boys' Basketball Head Coach "Contingent upon the issuance of a certification."

78.  The Board also updated its website at piscatawayschools.org to list "Boys' Basketball Head Coach: Bob Turco (rturco@stahs.net)" for contact information purposes.

79.  Volunteer, Assistant, and Head Coaches must meet the NJSIAA qualifications for coaches by possessing a New Jersey Teaching Certification or Instructional Substitute Credential (transcript demonstrating completion of 60 semester-hour credits); one-time completion and proof of up-to-date on Mandatory Trainings for NFHS Fundamentals of Coaching, First Aid, CPR, Concussion, Heat-Illness Prevention, Implicit Bias and the BeNice Program; and providing a

background and fingerprint report conducted by State authorities as required by law for all personnel working within a school environment. (NJSIAA Handbook, Revised July 2024).

80. Coaches who have experience coaching in an NJSIAA high school before the 2006-2007 school year are exempt from the NFHS Fundamentals of Coaching requirement (i.e., Plaintiff Shenee Clarke and Varsity Boys' Basketball Head Coach Robert Turco).

1. **Boys' Basketball 2024-2025 Appointments**

81. It usually takes 6-8 weeks for the State of New Jersey's Department of Education to process and issue an Instructional Substitute Credential after an applicant creates an NJEdCert account, pays the application processing fee, and submits the required documentation. Substitute teaching credentials are valid for five (5) years.

82. Prior to accepting an appointment as Piscataway High School's Boys' Basketball Head Coach, Robert W. Turco, Jr. spent six (6) seasons as Head Coach at non-public Bishop Arh/St. Stomas Aquinas in Edison and prior to that six (6) as Head Coach at non-public Notre Dame High School in Lawrenceville, NJ.

83. Unlike the Boys' Basketball Head Coach appointment at Piscataway High School, those two (2) non-public head coaching positions did not require instructional certificates or substitute teaching credentials.

84. To obtain a substitute credential, the applicant must pay a fee, clear the criminal history background check, have fingerprints approved, create an online NJEdCert account, apply for the 60-Credit Instructional Substitute Credential, and have college/university send official copies of electronic transcripts to the Middlesex County Office, Department of Education.

85. Over the years, Human Resources Director Colleen Pongratz, Executive Assistant to the Human Resources Director Christina Buchek, Human Resources Clerk Stephanie Dunlop, and the various Human Resources personnel established a practice of assisting teaching staff members and athletic coaches in obtaining substitute teaching credentials from the Middlesex County Superintendent of Schools and the New Jersey Department of Education.

86. Given the circumstances, or individual, Human Resources would expedite the credentials process.

87. That was the case with Boys' Basketball Head Coach Robert W. Turco, Jr.

88. Human Resources Director Colleen Pongratz, Executive Assistant to the Human Resources Director Christina Buchek, Human Resources Clerk Stephanie Dunlop, Piscataway High School Principal Christopher Baldassano, Director of Athletics Robert Harmer, Secretary-Athletics

Linda Pagano, and several other personnel expedited the process for securing a substitute teaching credential for Boys' Basketball Head Coach Robert W. Turco, Jr.

89.  Amazingly, Boys' Basketball Head Coach Robert W. Turco, Jr.'s substitute teaching credential was issued on July 1, 2024. It is valid until July 1, 2029.

90.  Given the circumstances or individual involved, Human Resources would not only expedite the credentialing process but might even bypass it entirely.

91.  After a volunteer, assistant, or head coach is in receipt of a new or an additional New Jersey Department of Education Educational Certification or endorsement, that coach must submit a copy of it via hand-delivery, regular or certified mail, or email to Human Resources to the attention of Ms. Christina Buchek cbuchek@pway.org for record keeping purposes.

92.  Human Resources Director Colleen Pongratz, Executive Assistant to the Human Resources Director Christina Buchek, Human Resources Clerk Stephanie Dunlop, Piscataway High School Principal Christopher Baldassano, Director of Athletics Robert Harmer, Secretary-Athletics Linda Pagano, and various other personnel willingly dispensed the substitute credentials requirement for Boys' Basketball Head Coach Robert W. Turco, Jr. *by having the Board appoint Loroine McKnight as Boys' Basketball Assistant Coach - - even though Loroine McKnight neither received an educational certificate (substitute credential) nor emailed or hand-delivered a copy to Executive Assistant to the Human Resources Director Christina Buchek.*

93.  *In violation of NJSIAA rules and regulations, Human Resources personnel and the Board knowingly approved Loroine McKnight as Boys' Basketball Assistant Coach for the 2024-2025 school year even though he does not hold the required substitute teaching credential.*

94.  *In violation of NJSIAA rules, Human Resources personnel and the Board further knowingly approved Loroine McKnight as Football Assistant Coach and Boys' Spring Track and Field Assistant Coach for the 2024-2025 school year even though he does not possess the required substitute teaching credential.*

95.  According to the Minutes of the June 13, 2024, Regular Public Meeting at Attachment F, Extra Duty Contracts, Loroine McKnight is approved to earn at minimum $12,729.00 from appointments as Assistant Coach to two (2) sports teams, Football (G-3, $6,421.00) and Boys' Basketball (G3, $6,308.00).

96.  Loroine McKnight has also been appointed Boys' Spring Track Assistant Coach. On the piscatawayschools.org website at Athletic Staff Contact Information, his electronic address is listed as "Loroine McKnight – mcknight0905@gmail.com."

97. Additionally, according to the Minutes of the July 11, 2024, Regular Public Meeting, the Board approved the "High School Athletics" supervised volunteers for the 2024-2025 school year. Approved for Boys' Basketball are Donald Jones, Mark Labos, Alfred Lewis, Joseph Norton, and Michael Pernell.

98. *Donald Jones, Michael Pernell, and Mark Labos neither received an educational certificate (substitute credential) nor emailed, hand-delivered or otherwise a copy to Executive Assistant to the Human Resources Director Christina Buchek.*

99. *In violation of NJSIAA rules, Human Resources and the Board knowingly approved Donald Jones, Michael Pernell, and Mark Labos as supervised volunteers for Head Coach Robert M. Turco, Jr. and Boys Basketball even though they do not possess the required substitute teaching credential*.

## 2.    Girls' Basketball 2024-2025 Appointments

100. Plaintiff has at all times possessed the required standard instructional certificate. She also complied with the Board's physical examination and the NJSIAA coaching requirements.

101. Unlike Boys' Basketball Head Coach Robert W. Turco, Jr., Human Resources Director Colleen Pongratz, Executive Assistant to the Human Resources Director Christina Buchek, Human Resources Clerk Stephanie Dunlop, Piscataway High School Principal Christopher Baldassano, Director of Athletics Robert Harmer, Secretary-Athletics Linda Pagano, and various other personnel plainly refused to expedite the process for Plaintiff's three (3) assistant coaches to obtain substitute credentials.

102. Again, Plaintiff's assistant coaches were Zana Godoy, Amanda Gordon, and William Gilbert. All three (3) are African American.

103. Plaintiff repeatedly advised Human Resources Director Colleen Pongratz, Executive Assistant to the Human Resources Director Christina Buchek, Human Resources Clerk Stephanie Dunlop, and other Human Resources personnel that Zana Godoy and William Gilbert had created NJEdCert accounts and were awaiting the substitute credentials.

104. Amanda Gordon already had an instructional certificate and complied with the NJSIAA coaching requirements. She was just waiting for a copy of her physical examination record to submit.

105. On numerous occasions Plaintiff pleaded with Human Resources Director Colleen Pongratz, Executive Assistant to the Human Resources Director Christina Buchek, Human Resources Clerk Stephanie Dunlop to intervene with the Middlesex County Superintendent of Schools on their behalf to expedite the granting of the substitute credentials.

106. At every turn, all that was said in return, especially from Piscataway High School Principal Christopher Baldassano and Human Resources Director Colleen Pongratz was, "that they don't help with that anymore."

107. Eventually there came a time, Plaintiff Shenee Clarke believed that she did not have the freedom to ask Principal Christopher Baldassano, Director of Athletics Robert Harmer, Human Resources Director Colleen Pongratz, or anyone else in Human Resources questions about her assistant coaches obtaining expedited substitute teaching credentials without facing retaliation.

108. Again, Plaintiff warned Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek that she would report to the Middlesex County Superintendent of Schools and the Board's Superintendent of Schools their abrupt policy of withholding assistance from qualified coaching candidates in securing Instructional Substitute Credentials, a requirement for employment under both Board Policy and the NJSIAA.

109. In a letter dated November 15, 2024, Director of Human Resources Colleen B. Pongratz, acting on behalf of the Board, prematurely wrote:

    "Dear William,

    The Piscataway Township Board of Education at its meeting on Thursday, November 14, 2024, officially acted to rescind your offer of employment as High School Girls' Basketball Assistant Coach effective 11/12/24.

    Please sign one copy of this letter and return it to Christine Buchek at the Administration Building.

    Sincerely, Christine . . ."

110. It was evident that High School's administrators and support staff were conspiring to sabotaging Plaintiff's right to select her own girls' basketball assistant coaches.

111. Fortunately, without assistance from Human Resources, Amanda Gordon and William Gilbert are qualified and eligible for employment as High School Girls' Basketball Assistant Coaches for the 2024-2025 school year, as of December 2, 2024, and before the start of the season. William Gilbert obtained the substitute teaching credential, while Amanda Gordon secured the necessary physical examination records from her physician.

112. Principal Christopher Baldassano, Director of Athletics Robert Harmer, and Human Resources Director Colleen Pongratz persisted in attempting to control and restrict Girls' Basketball Head Coach Shenee Clark's ability to select assistants with coaching styles and philosophies compatible with her own.

14

113. They dared not direct such disrespect at Boys' Head Coach Bob Turco, a Caucasian male.

114. The ability of a Head Coach to choose assistants with ideas compatible with her own is an integral part of ensuring a staff that is responsive to the mandate of the NJSIAA, the High School administration, the Head Coach, and more importantly, the players themselves.

115. Principal Christopher Baldassano, Director of Athletics Robert Harmer, and Human Resources Director Colleen Pongratz referred School Counselor Nicole Duarte and Preschool Teacher/Children's Corner Jessica Rediger whom Girls' Basketball Head Coach Shenee Clark's rejected as assistant coach candidates not only because they lacked experience coaching the game of basketball, their coaching philosophies were nonexistent.

116. School Counselor Nicole Duarte's prior experience as a coach in the School District was as Gymnastics Assistant Coach, G-1, $5,395.00, for the 2024-2025 school year.

117. And as for Jessica Rediger, Plainitff requested that either Principal Christopher Baldassano, Director of Athletics Robert Harmer or Human Resources Director Colleen Pongratz's provide her with a copy of Jessica Rediger's sports resume to prepare in advance for a brief interview.

118. Absolutely no one responded to Girls' Basketball Head Coach Shenee Clark's request for a copy of Preschool Teacher/Children's Corner Jessica Rediger's athletic resume. It was either intentionally withheld or nonexistent.

119. Jessica Rediger, a Preschool Teacher at Children's Corner, has limited sports coaching knowledge, primarily based on her experience playing high school and collegiate softball.

120. Like Boys' Basketball Head Coaches, Girls' Basketball Head Coaches have the vested right to be assured that assistant coaches are well-qualified and knowledgeable enough to effectuate their coaching philosophies, techniques and game plans on a consistent basis throughout the regular and post-season.

121. Ultimately, Plaintiff felt she could not ask Principal Christopher Baldassano, Director of Athletics Robert Harmer, or Human Resources Director Colleen Pongratz questions about expediting substitute teaching credentials or approving volunteer assistant coaches without risking retaliation.

122. Plaintiff also believed that she could not question Principal Christopher Baldassano, Director of Athletics Robert Harmer and Human Resources Director Colleen Pongratz's about why they referred unqualified candidates to fill her assistant coach positions without risking retaliation.

**D.    Plaintiff's Performance of the Job Duties Amounts to Board's Unlawful Rescission of the ACEDC**

123.  According to NJSIAA Rules and Regulations, coaches may have meetings with their team or individual players during the Summer.

124.  Coaches may coach an AAU/club/travel team with their players on the team.

125.  A school may assist high school teams or athletes by providing transportation, entry fees, uniforms, and etcetera.

126.  The School District's 2023-2024 school year ended on June 18, 2024 (Early Dismissal-Last Day of School-Graduation).

127.  The opening day, "Teacher In-service Day," of the 2024-2025 school year for the Piscataway Township Schools was September 3, 2024.

128.  The "First Day for Students" attending Piscataway Township public schools during the 2024-2025 school year was the following day, September 4, 2024.

129.  The Piscataway Township Board of Education approved the 2024-2025 School Calendar on November 2, 2023.


**1.    The Girls' Basketball Team Participated in Summer Training and the Hunterdon Fall League**

130.  Plaintiff Shenee Clarke and her assistant coaches, Zana Godoy, Amanda Gordon, and William Gilbert, were introduced to the High School Girls' Team on May 28, 2024, at the Piscataway High School, by Athletic Director Robert Harmer.

131.  Among other assigned duties, Plaintiff was responsible for preparing the players for Winter competition through Summer and Fall training programs.

132.  Plaintiff began Summer Workouts (skills development) at Piscataway High School on July 9, 2024. Workouts took place every Tuesday and Thursday until August 29, 2024.

133.  Again, the ACEDC between the Board and Plaintiff was signed and duly executed by Board of Education President Shantell M. Cherry effective September 23, 2024.

134.  Plaintiff began Pre-Season on September 17, 2024, until November 12, 2024. Pre-Season activities consisted of study hall, weight training, and track conditioning workouts. The final workout took place at the Piscataway High School track.

135.  Athletic Director Robert Harmer approved the workout sessions during the Summer and Pre-Season. If Plaintiff was unable to attend a workout, she

timely informed Athletic Director Robert Harmer and he made sure that proper supervision and equipment was made available for the team.

136. The Supervisor of the 2024 Hunterdon Horizon Girls Fall Basketball League invited Plaintiff, her assistants, and the girls' basketball team to participate in that Fall League. Human Resources and Athletic Director Robert Harmer approved the participation application and paid the fee for the Girls' Basketball Team to compete in that Fall League.

137. Practices were twice per week at The YMCA at the Piscataway Community Center and/or the middle schools in the Piscataway Township School District. The girls' team members carpooled to practices and games with their parents.

138. Under the direction and guidance of Plaintiff, the Girls' Basketball team finished undefeated, and champions of the Hunterdon Horizon Girls' Basketball Fall League.

139. The Championship game, and final day of the Hunterdon Horizon Girls' Basketball Fall League, was November 3, 2024.

140. With the approval of Athletic Director Athletic Director Robert Harmer and Human Resources Director Colleen Pongratz, Plaintiff's employment with the School District commenced as early as July 9, 2024, or as recent as September 23, 2024.

**2.    Discriminatory Replacement of Girls' Basketball Head Coach**

141. Article XVI, Teachers/Certificated Personnel, Section G, Teacher Assignment, Subsection 2(a), Notice of Vacancies, provides that "Each school year, known vacancies for the following school year shall be posted on the district's website under the heading of "Anticipated Vacancies."

142. Between May 2024 and December 2024, according to Piscataway Township School District's Frontline Education (applitrack.com) and NJ School Jobs (njschools.com), the Board only posted for assistants regarding its Girls' Basketball program. That is, "Basketball-Girls" and "Assistants (3)."

143. Between May 2024 and December 2024, the Board did not post a vacancy through Piscataway Township School District's Frontline Education (applitrack.com) or NJ School Jobs (njschools.com) for the Girls' Basketball Head Coach position after entering an ACEDC with Plaintiff for the 2024-2025 school year effective September 23, 2024.

144. Nonetheless, during the November 14, 2024, Regular Public Meeting, the Board voted to "rescind," effectively terminate, its ACEDC with Plaintiff without notice or cause.

145. Again, on November 3, 2024, the Girls' Basketball Team had just completed an undefeated championship season in the Hunterdon Horizon Girls' Basketball Fall League.

146. When Plaintiff arrived at the November 14, 2024, Regular Public Meeting for what she believed would involve a discussion about the Girls' Basketball team's assistant coaches, she had no idea that it would be her last day as Head Coach.

147. Plaintiff Shenee Clarke described being shocked and blindsided by the Board, Superintendent of Schools Dr. Frank Ranelli, High School Principal Christopher Baldassano, and Athletic Director Robert Harmer's real purpose for her attendance at the meeting: to present Girls Basketball Head Coach Shenee Clark with verbal notice of her termination.

148. Plaintiff was equally shocked by the absence of reasons for the Board's decision to terminate a successful veteran female coach after just beginning ACEDC and near the start of the 2024-2025 season.

149. According to the "TAPintoPiscataway" article "Sudden Coaching Change Prompts Piscataway Girls Basketball Team, Parents to Demand Answers at Board Meeting," the Superintendent of Schools made the only official statement:

"Superintendent Dr. Frank Ranelli assured the team that "There is no plan to delay anything, and you will not miss anything. Tryouts will not be delayed, and you will not miss any scrimmages."

150. Though the timing of the Board's decision could have seemed shocking since it was just after the Girls' Basketball Team won a championship and weeks before the start of the Winter season, it may not have been so surprising to anyone following the trend at the School District.

151. Shockingly, since Girl's Basketball Head Coach Pat Mayo resigned after the 2011-2012 season, the School District did not appoint another woman head coach until Plaintiff Shenee Clarke for the 2024-2025 school year.

152. Since Pat Mayo's resignation, the Board appointed three (3) Caucasian men as Girl's Basketball Head Coach, Dave Kosa, Christopher Puder, and most recently High School Social Studies Teacher Brian Tuskan.

153. Corey Floyd, African American man, spent two (2) seasons as Girls' Basketball Head Coach during the 2012-2013 and 2013-2014 school years.

154. The Superintendent and Board did not renew ESL Teacher Christopher Puder's ACEDC. Instead, they appointed him Girls' Tennis Head Coach for the 2024-2025 school year.

155. In regard to the ten (10) high school Fall, Winter and Spring varsity sports for girls, only three (3) of the programs have female head coaches: Fall Cross-country (Male Head Coach Ashwin Anantharaman); Fall Soccer (Male Head Coach Daniel Verdia); Fall Field Hockey (Female Head

Coach Cynthia Botett); Fall Gymnastics (Female Head Coach Noelle Hartje); Fall Tennis (Male Head Coach Christopher Puder); Fall Volleyball (Male Head Coach Brian Tuskan); Winter Basketball (Brian Tuskan); Winter Track (Male Head Coach James Edwards-Boyd); Spring Softball (Female Head Coach Amanda Mclean); Spring Track (Male Head Coach Ashwin Anantharaman).

156. Even though the NJSIAA sponsors championship competition in girls' golf and wrestling, the School District does not have girls' golf or wrestling programs.

157. AT Teacher/High School Dana Strafer is the only woman head coach of a boys' athletic program. She is the head coach for Boys' Spring Varsity Tennis.

158. During the Regular Public Meeting on June 13, 2024, the Board approved nineteen (19) supervised volunteers for the 2024-2025 school year for the high school's athletic programs. Eighteen (18) are male. Two (2) volunteers were approved for Boys' Soccer, one (1) for Boys' Track, six (6) for Wrestling, and nine (9) for Football.

159. One (1) woman was appointed to Girls' Volleyball.

160. More importantly, during the Regular Public Meeting on July 11, 2024, the Board approved another six (6) supervised volunteers for the 2024-2025 school year for the high school's athletic programs. All six (6) are male. They include five (5) men for Boys' Basketball and another man for Football.

161. Athletic Director Robert Harmer provided insight into the chasm that exists between Boys' and Girls' sports programs when he responded to Plaintiff's request for approval to bring-on more than three (3) assistants, "Really, let's not compare girls' basketball with boys' football. Not even close."

162. The School District's Athletic Department has a reputation of failing to support the girls' sports teams with adequate resources and to fairly scrutinize the win-loss records of Piscataway High School's male coaches.

163. The decline in women head coaches at the School District stands in stark contrast to the increasing opportunities for women in nearly every other public-school role.

164. Months before the November 14, 2024, Regular Public Meeting, Principal Christopher Baldassano, Director of Athletics Robert Harmer and Human Resources Director Colleen Pongratz conspired with Girls Volleyball Head Coach Brian Tuskan to terminate Plaintiff and have him appointed Girls' Basketball Head Coach for the 2024-2025 school year. Shockingly, all of this took place during the volleyball season.

165. According to NJSIAA rules, the girls' 2024-2025 volleyball season began practicing on August 19, 2024, with the season starting of August 26,

2024.  The regular session competition did not end until November 24, 2024.

166. As the girls' volleyball team was striving to advance past the first round of the 2024 NJSIAA Girls Volleyball, Central Jersey, Group 4 Tournament, Head Coach Brian Tuskan was secretly conspiring with building administrators to "rescind"—or more accurately, terminate—Plaintiff's ACEDC to have himself appointed Girls Volleyball Head Coach.

167. Involved in that conspiracy were Girls' Gymnastics Assistant Coach Nicole Duarte and Jessica Rediger.  Even though Plaintiff considered Nicole Duarte and Jessica Rediger unqualified for Girls' Basketball Assistant Coach appointments, Brian Tuskan selected them as Assistant Coaches for the Girls' Basketball team.

168. During the June 13, 2024, Regular Public Meeting, the Board approved Nicole Duarte as Gymnastics Assistant Coach.  According to NJSIAA rules, the first practice for high school gymnastics was November 25, 2024, with competition beginning on December 2, 2024.

169. In their desperation to retaliate against Plaintiff for standing her ground—by selecting Zana Godoy, Amanda Gordon, and William Gilbert while rejecting Nicole Duarte and Jessica Rediger—Principal Christopher Baldassano and Athletic Director Robert Harmer deliberately disrupted the coaching staff of the Girls' Gymnastics team.

170. It is important to note that the Girls Basketball Head Coach position was not vacant or posted pursuant to Board policy, past practice or the Agreement between the Board and the Association.

171. More specifically, no other certificated unit member covered under the Agreement was given the opportunity to interview for the Girls' Basketball Head Coach position, in clear violation of the Agreement. In other words, the Board conspired to retaliate against Plaintiff Shenee Clarke by stripping her of the Girls' Basketball Head Coach position and immediately awarding it to Girls' Volleyball Head Coach Brian Tuskan, all during the crucial period of the girls' volleyball season.

172. The Girls' Volleyball Team's 2024-2025 season officially ended with a shutout loss to the J.P. Stevens High School on November 5, 2024.

3.  <u>**Notice of Rescission and Violation of Board Policy and the Agreement**</u>

173. On November 25, 2024, Plaintiff received official written notice of the Board's rescission, or more accurately wrongful termination, of her ACEDC as Girls' Basketball Head Coach.

174. In the November 15, 2024, letter written on behalf of the Board, Director of Human Resources Colleen B. Pongratz wrote:

"Dear Shenee,

The Piscataway Township Board of Education at its meeting on Thursday, November 14, 2024, officially acted to rescind your offer of employment as High School Girls' Basketball Head Coach effective 11/15/24.

Please sign one copy of this letter and return it to Christine Buchek at the Administration Building.

Sincerely, Christine . . ."

175. November 14, 2024, was just six (6) regular school days before Girls' Basketball tryouts on November 25, 2024.

176. According to NJSIAA rules, the girls' 2024-2025 basketball season began with tryouts, November 25, 2024, practices, December 2, 2024, and competition commencing on or after December 9, 2024.

177. Plaintiff Shenee Clarke was denied the procedural and substantive due process rights and protections guaranteed under Article III, Grievance Procedure, of the Agreement, and various Board policy.

178. District Policy 3124, Employment Contract, provides in relevant part that:

"The Board of Education requires that every nontenured teaching staff member employed by this district annually sign an employment contract for a term of not more than one year. The employment contract shall include the specific title of the position to which the teaching staff member is appointed; the term for which employment is contracted, including beginning and ending dates; a full description of the certification held by the teaching staff member and the date, if any, on which certification will expire, if applicable; the salary at which the teaching staff member will be employed; and the intervals at which the salary will be paid.

The employment contract will also include a provision for termination of the contract by either the teaching staff member or the Board of Education unless the teaching staff member is represented by a collective bargaining agreement and the agreement has termination provisions.

If the teaching staff member is not represented by a collective bargaining agreement or the collective bargaining agreement does not have provisions for termination, the nontenured teaching staff member may terminate the contract with a sixty calendar day notice and the Board may terminate the contract for non-tenured teaching staff members with a sixty calendar day notice."

179. District Policy 3143, Dismissal, provides in relevant part that:

"The Board of Education will enter a contract with each nontenured teaching staff member providing, in part, for the termination of employment by either party on proper notice in accordance with Board

Policy No. 3124. The Board may dismiss a nontenured teaching staff member when dismissal is in the best interest of the school district. Termination notice will be duly given in writing and will state the reason therefore."

180. District Policy 4140, Termination, provides in relevant part that:

"The Board of Education will enter a contract with each non-tenured support staff member providing, in part, for the termination of employment by either party. The Board may terminate the employment of an employee for incompetence, immorality, unfitness for service, insubordination, reduction in force, or other good cause. Any notification of termination for cause will include a full statement of the reasons for the dismissal on notice duly given a nonprobationary employee . . . "

181. Plaintiff's ACEDC in relevant part states that "All coaches agree to abide by the Code of Ethics for Coaches."

182. The Board never had cause to raise concerns with Plaintiff Shenee Clarke about performance issues, misconduct, or violations of board policy, the Code of Ethics for Coaches, or the terms and conditions of her ACEDC.

183. In fact, the Board never accused Plaintiff of any wrongdoing. Shenee Clarke did not fraudulently persuade the Board to enter into the ACEDC, nor did she breach its terms or misrepresent any aspect of her coaching or employment history to secure the Girls' Varsity Basketball Head Coach position.

184. At all times, Plaintiff abided by the Code of Ethics for Coaches as Girls Varsity Basketball Head Coach.

185. In the November 15, 2024, letter written on behalf of the Board, Colleen B. Pongratz, Director of Human Resources, wrote:

"Dear Shenee,

The Piscataway Township Board of Education at its meeting on Thursday, November 14, 2024, officially acted to rescind your offer of employment as High School Girls' Basketball Head Coach effective 11/15/24.

Please sign one copy of this letter and return it to Christine Buchek at the Administration Building.

Sincerely, . . ."

186. Simply put, the Board has neither stated orally nor reduced to writing its reason(s) for "rescinding," or more accurately, wrongfully terminating Plaintiff's ACEDC for the 2024-2025 school year in violation of Board policy and the Agreement.

**E.**   **Adverse Impact on the Girls' Varsity Basketball Players, Program, and Community**

187. The players and their parents were emotionally devastated by the Board's sudden and unexpected decision to "rescind," or more accurately, wrongfully terminate Plaintiff's ACEDC as Girls' Varsity Basketball Head Coach for the 2024-2025 school year.

188. During the November 14, 2024, Regular Public Meeting, a mother of one of the players was heard saying, "I'm just shaking my head, I don't believe this, another male coach!" Other parents made statements that included, "They never quit, when is this shit going to end!", "We can't never get what we want around here!", and "'Why are we getting a f @#% ing volleyball coach to coach our kids?' 'Why is it always us? Why do our kids always have to be the ones to suffer? Why us? It ain't right!'"

**COUNT ONE**
**Title IX of the Education Amendments Act of 1972**
**Sex Discrimination**

189. Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 188.

190. Title IX of the Education Amendments Act of 1972 prohibits sex discrimination by educational institutions that accept federal funds.

191. Defendant Piscataway Township Board of Education accepts federal funds and is a person within the meaning of Section 11 of 29 U.S.C. § 630.

192. Defendant Piscataway Board of Education violated Plaintiff's rights under Title IX when it replaced her, a successful, veteran Girl' Basketball Head Coach, with a less credentialed and unexperienced Caucasian man.

192. The Girls' Basketball Team immediately complained at the November 14, 2024, Regular Public Meeting that the Piscataway Board of Education's decision to "fire" Plaintiff deprives them of the opportunity to "receive coaching."

193. The conduct described herein constitutes unlawful discrimination on the part of Defendant in violation of Title IX of the Education Amendments Act of 1972.

194. By terminating Plaintiff's employment, Defendant did segregate or classify Plaintiff, based on her sex, in a way that deprived employment opportunities to Plaintiff. Defendant's decision to terminate Plaintiff and treat her differently than male coaches resulted from a knowing and intentional pattern of discrimination in violation of Title IX of the Education Amendments Act of 1972.

195.  As a direct and proximate result of Defendant's violation of Title IX of the Education Amendments Act of 1972, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## COUNT TWO
### 42 U.S.C. SECTION 1983

196.  Plaintiff incorporates herein by reference the factual allegations in Paragraphs 1 through 195.

197.  At all times material to this Complaint, Plaintiff was a part of the certificated instructional staff with all of the rights and benefits conferred by that designation pursuant to the collective negotiations Agreement between the Piscataway Township Board of Education and the Piscataway Township Education Association, Board Policy, and the Piscataway Township Public Schools Employee Handbook 2024.

198.  At all times material to this Complaint, Plaintiff had a property interest in continued employment. Plaintiff's protected property interest in continued employment was subject to procedural due process protection pursuant to the Fourteenth Amendment to the United States Constitution.

199.  The Piscataway Township Board of Education promulgated and fostered practices, rules and understandings through its documents and course of conduct which created in Plaintiff a legitimate claim of entitlement to continued employment absent "just cause."

200.  In violation of 42 U.S.C. Section 1983, Defendant Piscataway Township Board of Education deprived Plaintiff of rights that are guaranteed to her by the United States Constitution, the laws of the State of New Jersey, and the rules and regulations of the Board itself.

201.  Plaintiff is entitled to due process pursuant to the Fourteenth Amendment to the United States Constitution.

202.  The involvement of the Piscataway Township Board of Education through its official members, building administrator, directors and employees provides the state action that is essential for Plaintiff to bring an action pursuant to 42 U.S.C. Section 1983.

203.  The Piscataway Township Board of Education through its official members, building administrator, directors and employees, violated Plaintiff's rights by terminating Plaintiff in direct contravention of her rights as a part of the certificated teaching staff. High School Principal Christopher Baldassano, Athletic Director Robert Harmer, Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek are also liable for the deprivation of Plaintiff's substantive due process rights because of the reckless and shocking manner in which she was terminated.

204. As a result of Plaintiff Shenee Clarke being deprived of her procedural and substantive due process rights, Plaintiff has suffered irreparable damage to her reputation, suffered tremendous financial loss, and is enduring tremendous emotional distress as a direct and proximate result of the Defendant's wrongdoing.

**COUNT THREE**
**42 U.S.C. SECTION 1985**

205. Plaintiff incorporates herein by reference the factual allegations in Paragraphs 1 through 204.

206. Defendant conspired, in violation of 42 U.S.C. Section 1985, to deprive Plaintiff Shenee Clarke of the equal protection of the laws of the United States and the laws of the State of New Jersey.

207. Defendant's High School Principal Christopher Baldassano, Athletic Director Robert Harmer, Human Resources Director Colleen Pongratz and Executive Assistant to the Human Resources Director Christina Buchek found a pretext and conspired to act in a manner contrary to the best interests of the School District and the Girls Basketball program for the 2024-2025 school year by causing the Piscataway Township Board of Education to wrongfully terminate Plaintiff in violation of Plaintiff's rights of procedural and substantive due process.

208. As a result of Defendant's actions, Plaintiff has suffered irreparable damage to her reputation, suffered tremendous financial loss, and is enduring emotional and physical distress as a direct and proximate result of the Defendant's wrongdoing.

**COUNT FOUR**
**42 U.S.C. SECTION 1988**

209. Plaintiff incorporates herein by reference the factual allegations in Paragraphs 1 through 208.

210. Plaintiff Sheree Clarke is entitled to her attorneys' fees and expenses for Defendant's intentional violations of her right to due process. As a result of Defendant Piscataway Township Board of Education's violations of 42 U.S.C. Sections 1983 and 1985, Plaintiff is entitled to recover all such fees and expenses.

**COUNT V**
**WRONGFUL TERMINATION**

211. Plaintiff incorporates herein by reference the factual allegations in Paragraphs 1 through 210.

212. Plaintiff Shenee Clarke was a certificated employee of Defendant Piscataway Township Board of Education.

213. Plaintiff was entitled to statutory, contractual and established policy and practice protections in the event that she was subjected to the Piscataway Township Board of Education's dismissal and termination procedures.

214. Defendant Piscataway Township Board of Education, by its actions, circumvented Plaintiff's rights and wrongfully discharged her from employment.

215. That termination violates the public policy of the State of New Jersey and constitutes an unlawful termination from public employment.

216. Plaintiff has suffered irreparable damage to her reputation, tremendous financial injury, and emotional and physical distress as a direct and proximate result of the Defendant's intentional wrongdoing.

**WHEREFORE,** Plaintiff prays:

1. For a jury to be empaneled and a judgment for declaratory relief;

2. Compensatory damages to include front pay and back pay;

3. Punitive damages;

4. Attorney's fees and the cost of litigation to include expert fees;

5. Damages for humiliation, embarrassment and emotional distress and suffering;

6. Damages for willful and bad faith conduct;

7. All other remedies and injunctions as are necessary and proper to eliminate the discriminatory practices of Defendant;

8. A judgment against Defendant for prejudgment interest; and,

9. Such other relief as this Court deems proper all in excess of $500,000.00.

Dated: February 14, 2025

Respectfully submitted,

*/s/ Norman R. Jimerson, Jr.*

Norman R. Jimerson, Jr.
NJ Bar I.D. # 030061999
The Jimerson Practice, LLC
101 Central Avenue
Clifton, New Jersey 07011
nrj@thejimersonpracticellc.com

Telephone (973) 772-4100
Facsimile (973)772-0979
Attorneys-for-Plaintiff